## The Inhabitants of Oakham *vs.* Cyrus Holbrook, Administrator.

The defendant was administrator of one of two mortgagees of real estate, on which was a mill and a reservoir dam. While the premises were in possession of certain persons under license from the other mortgagee, who had subsequently quit-claimed all his interest therein to the defendant, the dam broke away, as the plaintiffs alleged, because of its original insufficiency and subsequent want of repair, and carried away the plaintiffs' bridges. *Held,* that if so, the defendant was not liable for the loss, not being in possession by himself, nor by his tenants

Action of tort commenced November 15th, 1851, to recover damages for an alleged destruction of certain bridges of the plaintiffs by the breaking away of a certain reservoir dam, February 10th, 1850, averred to have been insufficiently built, and not properly kept in repair and managed. The defendant, in order to raise certain questions of law deemed preliminary to the question of sufficiency or care of the dam, admitted at the trial in the court of common pleas, before *Merrick,* J. that the dam broke away at the time alleged, and that the plaintiffs sustained thereby the injury set forth in the declaration. And he offered evidence tending to show the following facts, which, for the purpose of raising the questions of law, were to be assumed as proved: In October, 1845, John Watson owned a mill and mill-dam, and also the reservoir dam aforesaid, which was appurtenant to the same. In December, 1845, he mortgaged all said estate to Elijah Hammond. In February, 1846, he mortgaged the same to John Estabrook, and in September, 1847, to John Estabrook and Jacob W. Wat-

son; all said mortgages being for the security of debts then due. On the 16th of September, 1847, said Estabrook and Watson entered upon the mill and mill-dam for foreclosure of the two mortgages last named, but made no formal entry upon the reservoir dam. John Watson died in October, 1847, and in the same month Estabrook died, and the defendant was appointed his administrator. The administratrix of the estate of John Watson, on the 24th of June, 1848, under a license of court, conveyed to Jacob W. Watson all the interest of her intestate in the premises, and on December 29th, 1849, said Jacob quitclaimed all his interest therein to the defendant as administrator of Estabrook. John Watson occupied the mill and reservoir until December 7th, 1846, when he let them to Daniel M. Parker for the term of four years, and agreed to execute a lease of them for that period, but such lease was never executed. Parker entered and occupied the premises under said agreement, until after John Watson's death and until November, 1847, at which time he agreed with Jacob W. Watson to hire the premises, and occupied them until December, 1849, paying rent to him therefor.

On December 1st, 1849, J. B. and R. Dexter took possession of the premises, and occupied them until the destruction of the dam above stated. They entered under a verbal agreement with said Jacob to purchase all his right in the premises subject to the mortgages to Hammond and to John Estabrook, no mention being made in said agreement of the mortgage to Watson and Estabrook jointly.

Shortly before January, 1850, said Dexters were informed by Jacob W. Watson that he should be unable to perform his agreement with them above stated. They then called upon the defendant, who directed them to apply to George Davis the guardian of the minor children of Estabrook. In January, 1850, the defendant accompanied said Davis to the mill, and in the presence of the defendant, but without his participation, Davis proposed as such guardian to take up the Hammond mortgage and convey the estate to said Dexters. It further appeared that in June, 1850, after the destruction of the dam, the defendant received and in his administration account ac-

counted for, the sum of $302, which was paid him by Jacob W. Watson, being the proceeds of certain lumber cut from the mortgaged estate, which lumber was sawed by said Parkers during their occupancy, they paying for the rent of the mill by sawing the same. It was agreed by the parties that the foregoing facts should be taken as an agreed statement, and if the court should be of opinion that the plaintiff could recover, then the case should be sent to a jury to determine the questions of the care, management and sufficiency of the dam ; otherwise the plaintiffs to become nonsuit. On this agreement *Merrick*, J. directed a nonsuit, whereupon the plaintiffs appealed to this court.

*C. Allen & D. Foster*, for the plaintiffs. The defendant is liable for the damage occasioned to the plaintiffs.

1. Because the owner, as well as the occupant of land, is liable for damages occasioned by a structure which is so defective that no man of reasonable prudence would permit it to remain. *Staple* v. *Spring*, 10 Mass. 72 ; 2 Greenl. Ev ◊ 172. This dam did not become a nuisance to the plaintiffs, or give them any cause of action, either by occasioning actual damage, or infringing rights, from which the law implies damage until it broke away.

2. To avoid circuity of action, the defendant is liable to third persons, if he allowed premises owned by him, and of which he was, in legal contemplation, in possession, to remain so defective, by want of permanent and substantial repairs, which he, and not any tenant, would be bound to make. *Lowell* v. *Spaulding*, 4 Cush. 277 ; *Ferguson* v. ———, 2 Esp. R. 590. The occupants of the premises in this case, had no legal estate therein. *Dakin* v. *Allen*, 8 Cush. 33.

3. If the injury was occasioned by a defect in the management of the dam, not being a new act of the occupant, or licensee, the defendant being the owner, and having the legal possession, is liable. *Earle* v. *Hall*, 2 Met. 353; *Mayor of N. Y.* v. *Bailey*, 2 Denio, 445; *Gardner* v. *Heartt*, 2 Barb. 165; *Bush* v. *Steinman*, 1 Bos. & Pul. 403 ; *Leslie* v. *Pounds*, 4 Taunt. 650; *Rex* v. *Pedly*, 1 Ad. & El. 822.

*G F. Hoar*, for the defendant.

Merrick, J.   The plaintiffs do not allege that the defendant was personally guilty of any negligence, either in the original construction, or in the subsequent care and management of the reservoir dam; but they complain that it was broken down and swept away, either in consequence of its not having been properly built, or not afterwards kept in sufficient and suitable repair.   And they seek to hold the defendant responsible for the damage which was occasioned to them by its destruction and loss, solely upon the ground that he was then the owner of it, and of the mill and mill-dam to which it is said to have been appurtenant.   But the only interest he ever had in the premises was vested in him as the administrator of the estate of John Estabrook, or was derived from a quitclaim deed executed and delivered to him as such administrator, on the 29th day of December, 1849, by Jacob W. Watson, who had become entitled to the right in equity of redeeming the premises from the outstanding mortgages upon it.   At that time J. B. and R. Dexter were in possession of the estate, under a verbal agreement with Watson for its purchase; and they continued to possess and occupy it for their own use under that agreement, and a similar one subsequently made with the guardian of the heirs at law of John Estabrook, until the dam fell down and was destroyed, on the 10th day of February next following.   No contract was ever made with them by the defendant respecting it, and he never promised them, or any one to support, maintain, or repair it.

It is a principle of the common law, fully recognized and affirmed by this court, in a case recently determined, that the occupier, and not the landlord, is bound, as between himself and the public, so far to keep buildings and other structures in repair, that they may be safe for the public; and that such occupier is *primâ facie* liable to third persons for damages arising from any defect.   *Lowell* v. *Spaulding*, 4 Cush. 277; *Regina* v. *Bucknall*, 2 Ld. Raymond, 804.   If, therefore, it be assumed that the Messrs. Dexter were his tenants, as the defendant had not contracted with them, nor in any way stipulated to support the dam, or to keep it in secure and safe condition, or to do any thing whatever to it, he was not liable

while it was in their possession and under their sole and exclusive control, for losses which occurred to others in consequence of its not being kept in proper and suitable repair.

Nor was the defendant responsible for such losses, upon the ground that as owner of the estate he is to be considered as having authorized and affirmed the continuance of the reservoir dam while it was in the possession of the Messrs. Dexter. Such a liability attaches only to a party who transfers an estate with the original wrong, or who receives rent or other consideration for its continuance. *Rosewell* v. *Prior*, 2 Salk. 460; *Rex* v. *Pedly*, 1 Ad. & El. 822. But the defendant did nothing of the kind. He was never himself in possession of the estate. He did not demise it; he received no rent, and never claimed that the Messrs. Dexter were his tenants. He did nothing to vindicate or affirm his own title against them. On the contrary, they took possession of the premises upon an agreement with another party, and always occupied without obtaining the license or consent of the defendant. If the title was in him, he was not obliged to assert it; if he considered the burden attached to the estate greater than its benefits, he was not obliged to assume it. At any rate, if the dam was a nuisance in consequence of its weakness and insufficiency to retain and safely hold back the waters accumulated by it, the defendant had no connection with it. He did not build nor occupy, nor by any bargain or act of his own, authorize any other person to occupy it; and therefore he cannot be said either to have caused the wrong, or to have made himself in any way responsible for its continuance, or the consequences which resulted from it.     *Plaintiffs nonsuit.*